**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TORIBIO VALDEZ ORTIZ, | ) No. CV 13-9259-AS |
| | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER OF REMAND** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On December 17, 2013, Plaintiff filed a Complaint seeking review of the denial of his application for Social Security benefits (Docket Entry No. 1). The parties have consented to proceed before a United States Magistrate Judge (Docket Entry Nos. 8, 10). On May 19,

2014, Defendant filed an Answer to the Complaint along with the Administrative Record ("AR") (Docket Entry Nos. 13-14). The parties filed a Joint Stipulation ("Joint Stip.") on July 25, 2014, setting forth their respective positions on Plaintiff's claim (Docket Entry No. 15). The Court has taken the matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On May 4, 2011, Plaintiff, formerly employed as a cook, janitor and a painter (AR 167), filed an application for Disability Insurance Benefits, alleging an inability to work since October 10, 2008 due to diabetes, vision problems in the right eye, and left eye blindness. (AR 133—38; 165—72). On July 6, 2012, the Administrative Law Judge ("ALJ"), Sally C. Reason, examined the record and heard testimony from Plaintiff and vocational expert Ronald Hatakeyama. (AR 46—67). On July 23, 2012, the ALJ issued a decision denying Plaintiff's application. (AR 25-32). The ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, monocular vision, diabetic retinopathy and peripheral neuropathy in the lower legs. (AR 27). However, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 31—32).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 17—18). The request was denied on October 22, 2013. (AR 1—6). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g); 1383(c).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in rejecting his subjective symptom testimony in support of his disability claim. (Joint Stip. 3).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim warrants a remand for further consideration.

**A.   The ALJ Failed To Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ impermissibly dismissed Plaintiff's subjective symptom testimony. (See Joint Stip. 4-11). Defendant contends that the ALJ's reasons for discounting Plaintiff's testimony, namely, his inability to communicate in English, a pattern of noncompliance with his treatment and medical evidence that failed to support Plaintiff's claims, were "specific and well-supported." (AR 13-14). As set forth below, the Court does not agree.

Plaintiff made the following statements in a disability report dated September 13, 2011: he suffers from constant pain in both knees, loses his balance when walking or standing and has numbness on both legs from his knees to his ankles. (AR 177, 181). Plaintiff claimed that his poor vision and severe pain in his legs affected his ability to care for his personal need and that he needs assistance on a daily basis because of his poor vision. (AR 180). During the July

6, 2012 hearing, Plaintiff testified that he could not work because his eyesight had gotten worse and the numbness on his feet. (AR 57). Plaintiff described a "very deep, hard pain" in his legs from his knees to the upper part of his legs, that "feels like needles and it feels asleep and constant pain." (AR 58-59). Plaintiff claimed that the pain prevented him from standing and sitting for long periods of time and that after sitting, he could not "stretch [his] feet in order to bend them and straighten them out." (AR 59-60).

The ALJ found that Plaintiff had the following residual functional capacity ("RFC") to do medium work except for limitations to occasionally balancing, can frequently do posturals but should not climb ladders, cannot work around hazards, cannot do tasks requiring fine vision tasks, and is illiterate in English. (AR 28).

The ALJ made the following assessment of Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 29).

4

The ALJ then provided the following reasons for finding Plaintiff's testimony to be not credible: (1) "inconsistent testimony regarding his inability to communicate in English AR 29); (2) "[a]ctivities of daily living . . . are not entirely consistent the level of dysfunction alleged" (AR 29); and (3) " a pattern of noncompliance that reduces his credibility regarding the severity of symptoms." (AR 30).

An ALJ's assessment of a claimant's credibility is entitled to "great weight." <u>See</u> <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant

"need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a claimant's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, substantial evidence did not support the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not fully credible.

First, the ALJ asserted that Plaintiff was not credible because he gave inconsistent statements about his ability to communicate in English. (AR 29.) See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ may consider inconsistencies between a claimant's statement and conduct). The ALJ noted that Plaintiff stated that he

6

could not read, write, speak, or understand English in his May 2011 disability report (AR 165), but that a third party had indicated, in a Report of Contact dated August 1, 2011, that Plaintiff could communicate in English without difficulty. (AR 174 ("TALKED TO THE CLMT. (CLMT SPEAKS GOOD ENGLISH!!)").) At the hearing, Plaintiff testified that while he could verbally communicate some English, he was unable to read or write English. (AR 51). Nevertheless, the ALJ ultimately found that Plaintiff had "such poor English language fluency that he is limited to jobs where this is not an issue." (AR 29). Thus, the ALJ adjusted Plaintiff's Residual Functional Capacity to note that Plaintiff is illiterate in English. (AR 31). Thus, the ALJ's finding that Plaintiff was functionally limited in his ability to communicate in the English language, was consistent with Plaintiff's assertions and reflected the ALJ's rejection of the third party's statement -- based upon a contact with Plaintiff to ensure that Plaintiff was aware of a hearing date -- that Plaintiff spoke "good English." The Court finds that the ALJ's reliance on Plaintiff's inconsistent testimony is not supported by the record and is not a clear and convincing reason to discount Plaintiff's allegations.

Second, the ALJ found that that Plaintiff's activities of daily living were not entirely consistent with the level of dysfunction he alleged. (AR 29—30). Specifically, the ALJ found Plaintiff's testimony that he was "unable to stand for any length of time or that he cannot walk for any length of time because of numbness in the feet," to be inconsistent with a medical report from the consultative examination report by Dr. Wallack which indicated that Plaintiff did

light housework while living with his sister.  (AR 29—30, 322).  The Court finds that the ALJ mischaracterizes Plaintiff's testimony. Plaintiff testified at the hearing that he had difficulty standing and walking for *long periods of time*, not for *any* length of time. (AR 60).  As Plaintiff points out, "many if not all household chores are performable without being able to stand and walk for long periods of time." (Joint Stip. 8).  The ALJ also noted that, "[t]he claimant mentioned difficulties with self-care to Dr. Wallack," (AR 30), but did not make any findings regarding this assertion.

The Ninth Circuit has reiterated that "[g]enerally, an ALJ should not consider activities like taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs to be substantial gainful activities." Lewis v. Apfel, 236 F.3d 503, 516 (9th Cir. 2001).  "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989));  Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.");  Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).

The Court finds that the ALJ's reliance on Plaintiff's reported daily activities, namely, light housework, as a basis for discrediting Plaintiff's statements regarding his functional

8

limitations is not supported by the record and is not a clear and convincing reason to discount Plaintiff's allegations.

Third, the ALJ discounted Plaintiff's credibility because she noted "a pattern of noncompliance" with Plaintiff's prescribed treatment. (AR 30) See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider when weighing credibility a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). In support of this contention, the ALJ referred to chart notes in 2000, 2004, and 2005, which indicate Plaintiff's failure to follow a prescribed diet, take his medications, and attend appointments. (AR 30). However, these records predate Plaintiff's alleged onset date (October 10, 2008) by several years, and the ALJ fails to cite to any records after the onset date to support his finding of a pattern of non compliance.

Accordingly, the Court finds the ALJ's reliance on Plaintiff's noncompliant treatment - based upon medical reports that predated the alleged onset date by several years - was not a clear and convincing basis for discounting Plaintiff's credibility. See Reddick v. Chater, 157 F.3d 715, 722—23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting of the context of materials or all parts of the testimony); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence.").[1]

---

[1]   Defendant notes that the record does not contain treatment records between the alleged onset date in 2008 and 2011, (see AR 200—89,

The ALJ also stated that the record does not contain any evidence that Plaintiff had treatment for falls due to neuropathy, diabetic ulcers, nonhealing wounds, or foot infections. (AR 30). However, Plaintiff never testified that he suffered from any of these symptoms. Thus, the ALJ's belief that Plaintiff's medical records do not reveal the symptoms that are associated with his impairments is pure conjecture. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (the ALJ "must not succumb to temptation to play doctor and make [his] own independent medical findings."); Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Finally, the ALJ discredited Plaintiff's subjective testimony on the basis that Plaintiff's diabetes symptoms were well-controlled.[2] (AR 50). See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1008 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). In support of this contention, the ALJ found that most of Plaintiff's visits to Northeast Valley Health Corporation were for refills of medication and cited to a clinical note from Plaintiff's visit on May 5, 2011.

_____

329–94), and construes this as a lapse in treatment which provides another basis for questioning Plaintiff's credibility. (See Joint Stip. 15). The Court disagrees. Where there is a "gap" in the medical evidence, the ALJ has an independent duty to fully and fairly develop the record, even where the claimant is represented by counsel. Widmark v. Barnhart, 454 F.3d 1063, 1064 (9th Cir. 2006). Here, the ALJ never attempted to ascertain whether there were missing chart notes despite being aware of their absence and indicating at the hearing that they would be added to the record. (AR 50).

(AR 39).   However, this note does not demonstrate that Plaintiff's medical condition was "well-controlled."   Instead, the note indicates that despite Plaintiff's insulin medication, his legs and feet were swollen and numb from the knees down for about a month, and that his vision was blurred.   (AR 391).   Furthermore, a chart note dated May 27, 2011 indicates Plaintiff's complaints of bilateral foot pain with burning sensations for the past two years, exacerbated with walking. (AR 383—84).   Examination revealed decreased sensation in Plaintiff's feet.   (Id.)   Similar records from April 2012 indicate that Plaintiff's vision decreased, and that despite surgical procedures, he was blind in the left eye.   (AR 395).   The Court finds that the ALJ's reliance on Plaintiff's well controlled symptoms as a basis for discrediting Plaintiff's testimony is not supported by supported by substantial evidence in the record and does not provide a clear and convincing reason for discrediting Plaintiff's subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1279, 1284 (9th Cir. 1995).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.   Harman v. Apfel, 211 F.3d 1172, 1175—78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where, as here, the circumstances of the

case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, supra, 211 F.3d at 1179-81.

It is not clear from the record whether the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.  Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 19, 2015


                                    /s/
                        _____
                              ALKA SAGAR
                        UNITED STATES MAGISTRATE JUDGE